UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YIBELTAL AGAFARI ZELEKE,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, *et al.*,<br><br>Respondents. | Case No. C26-2934-SKV<br><br>ORDER GRANTING IN PART PETITON FOR WRIT OF HABEAS CORPUS |

Petitioner Yibeltal Agafari Zeleke is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. Dkt. 6. Petitioner asserts in his petition that his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that his recent re-detention violated his procedural due process rights and applicable regulations. *See id*. at 17-20. Respondents filed a timely return to the petition (Dkt. 10), together with the declarations of ICE Deportation Officer Nhat Truong (Dkt. 11), and Respondents' counsel Jennifer Wong (Dkt. 12). Petitioner filed a reply to the return. Dkt. 13. More recently, Petitioner filed a motion for temporary restraining order ("TRO") (Dkt. 15), which is also pending. Respondents, at the

Court's direction, filed a response to the TRO. Dkt. 16.

The Court, having now considered the parties' submissions and the governing law, GRANTS in part Petitioner's petition for writ of habeas corpus (Dkt. 1), as set forth below, and DENIES Petitioner's motion for TRO as moot.

## I. BACKGROUND

Petitioner is a native and citizen of Ethiopia. Dkt. 6 at 8; Dkt. 11, ¶ 4. He entered the United States from Mexico on or about January 8, 2025, and was encountered by a Customs and Border Protection ("CBP") officer near Dulzura, California, on January 9, 2025. *Id.* The CBP officer determined Petitioner had entered the United States illegally and detained him for expedited removal. Dkt. 11, ¶ 4; Dkt. 12, Ex. 2. Shortly after entry, Petitioner made a credible fear claim and, on February 28, 2025, United States Citizenship and Immigration Services ("USCIS") conducted a credible fear interview after which the asylum officer found Petitioner had established a credible fear of returning to Ethiopia. *See* Dkt. 12, Ex. 1 at 2-3, Ex. 3 at 1. On March 17, 2025, Petitioner, who was then confined at the Rio Grande Detention Center in Laredo, Texas, was served with a Notice to Appear charging him with being removable under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I). *See* Dkt. 11, ¶¶ 5, 6; Dkt. 12, Ex. 3.

On August 22, 2025, Petitioner appeared for a merits hearing before an immigration judge ("IJ") in Laredo, Texas, and the IJ denied Petitioner's applications for relief from removal and ordered him removed to Ethiopia. Dkt. 11, ¶ 7; Dkt. 12, Ex. 4. Although Petitioner initially reserved his right to appeal, he never filed one. Thus, the IJ's order of removal became administratively final on September 22, 2025. *See id.*; *see also* 8 C.F.R. § 1241.1(c). On October 15, 2025, Petitioner completed a travel document application, and a travel document

request ("TDR") was sent to the Ethiopian Embassy on January 29, 2026. Dkt. 11, ¶ 8. On March 6, 2026, ICE Enforcement and Removal Operations ("ERO") sent an additional TDR to the Ethiopian Embassy and continued to check on the status of the TDR in April and May 2026. *Id.*

On April 13, 2026, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Texas. Dkt. 11, ¶ 9. The petition was granted on May 15, 2026, and the court ordered that Petitioner be immediately released and that he "[not] be re-detained without a material change in circumstances." *Id.*; Dkt. 12, Ex. 5. On May 16, 2026, ICE released Petitioner on parole pursuant to INA § 212(d)(5)(A), codified at 8 U.S.C. § 1182(d)(5)(A). Dkt. 11, ¶ 10; Dkt. 12, Ex. 6. Petitioner thereafter moved to Renton, Washington, to live with his uncle. Dkt. 6 at 9. According to Petitioner, he was initially told to attend monthly check-ins after he was released, but that requirement subsequently changed to weekly check-ins. *Id.*

On June 26, 2026, the Federal Democratic Republic of Ethiopia issued a travel document for Petitioner, and the travel document was received by ERO on June 29, 2026. Dkt. 11, ¶ 11; Dkt. 12, Ex. 7. On July 15, 2026, Petitioner reported to the Seattle ERO Field Office for a scheduled check-in at which time his parole was revoked, he was taken back into custody, and he was transported to NWIPC where he remains detained. Dkt. 11, ¶ 12; Dkt. 12, Ex. 9. On August 31, 2026, ERO served Petitioner with a Notice of Imminent Removal indicating that ICE expected to remove him from the United States in September 2026. Dkt. 11, ¶ 13; Dkt. 12, Ex. 10.

Petitioner initiated the instant action on August 18, 2026. Dkt. 6. Petitioner asserts in his current petition that: (1) his continued detention violates the Due Process Clause of the Fifth

Amendment because there is no significant likelihood he will be removed in the reasonably foreseeable future; (2) his re-detention violated his due process rights; and (3) Respondents failed to comply with their obligations under 8 C.F.R. § 241.13 in effectuating his re-detention. *See* Dkt. 1 at 17-20. Petitioner seeks immediate release from custody and injunctive relief relating to future re-detention. *Id*. at 20-21.

Respondents argue in their return that: (1) Petitioner's continued detention is lawful and not indefinite because ERO has obtained a valid travel document for Petitioner; (2) Petitioner's re-detention does not violate agency regulations and complies with the order issued by the Southern District of Texas; (3) Petitioner's re-detention comports with due process; and (4) Petitioner's requests for injunctive relief relating to future re-detention exceed the narrow scope of habeas review. *See* Dkt. 10 at 5-12.

Petitioner concedes in his reply brief that because the government has now obtained a travel document to Ethiopia, his claim for release under *Zadvydas* is moot. Dkt. 13 at 2. He argues, however, that the existence of a travel document does not eliminate his right under the constitution to a pre-deprivation hearing and, thus, that a remedy is still warranted with respect to his procedural due process claim. *Id.*

On September 16, 2026, Petitioner filed a motion for TRO seeking to prevent his transfer out of this jurisdiction while these proceedings remain pending. Dkt. 15. Petitioner's motion was provisionally granted by U.S. District Judge David G. Estudillo on the date it was filed, and Respondents were directed to file a response by 12:00 p.m. on September 17, 2026. Dkt. 16. Respondents filed a timely response, and Petitioner's petition, as well as his motion for TRO, are now ripe for review.

## II. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

## III. DISCUSSION[1]

### A. Procedural Due Process

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. U.S. Const. Amend. V. Due process protections extend to all persons within the United States, including noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for

[1] The Court need not address Petitioner's *Zadvydas* claim given his concession that it is moot. Similarly, the Court need not address Petitioner's claim that his re-detention violated federal regulations as it concludes Petitioner is entitled to relief on his procedural due process claim thus rendering his regulatory claim moot.

such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's re-detention, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts).

*1. Private Interest*

The Court first considers Petitioner's private interest. The Supreme Court has consistently recognized the significance of an individual's interest in freedom from detention. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests").

Respondents argue that Petitioner has a reduced liberty interest because "the liberty interests of U.S. citizens and [noncitizens] are not coextensive." Dkt. 10 at 10 (citing *Rodriguez Diaz*, 53 F.4th 1189, 1206 (9th Cir. 2022)). However, as other courts in this District have found, though the liberty interests of noncitizens and citizens are not equivalent, "that does not negate [a petitioner's] liberty interest in not being detained." *See, e.g., Kumar v. Wamsley*, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *Shinwari v. Hermosillo*, 2026 WL 262605, at *3 (W.D. Wash. Jan. 30, 2026). Moreover, as the Supreme Court has repeatedly recognized, "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp.3d 1083, 1093 (E.D.

Cal. Mar. 3, 2025) (citing, *e.g.*, *Morrissey*, 408 U.S. at 482). Thus, when Petitioner was released from ICE custody in May 2026, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). The first *Mathews* factor weighs in Petitioner's favor.

*2. Risk of Erroneous Deprivation*

The Court next considers the risk of an erroneous deprivation and the value of additional safeguards. Respondents argue that the risk of a constitutionally significant deprivation of Petitioner's liberty without a pre-detention hearing is minimal here because "[t]he conditions of [his] interim parole clearly stated that it 'is entirely within the discretion of ICE and can be terminated at any time for any reason.'" Dkt. 10 at 10 (citing Dkt. 11, ¶ 10; Dkt. 12, Ex. 6). Respondents maintain that they properly exercised their discretion to terminate Petitioner's parole once ERO obtained a valid travel document for him. *Id.*

However, as courts in this District have previously explained, the fact that "the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Shinwari*, 2026 WL 262605, at *4 (quoting *Ramirez Tesara*, 800 F. Supp. 3d at 1136). Thus, Respondents' reliance on the language of the notice authorizing Petitioner's parole as justifying his re-detention without any pre-deprivation process is misplaced. Moreover, Respondents offer no authority whatsoever to support their position that pre-deprivation process was not required in the circumstances presented here.

While it is not clear from the current record what value additional safeguards would have provided in the circumstances of this case, Respondents' failure to distinguish this case from the multitude of other cases in this District in which courts have found that revocation of parole

requires pre-deprivation process, the Court must conclude that the absence of such process here posed a risk of an erroneous deprivation. The second *Mathews* factor thus weighs in Petitioner's favor as well.

*3. Governmental Interest*

Finally, the Court considers the Government's countervailing interests. There is no question that the government has legitimate interests in enforcing immigration laws, protecting the community, ensuring a noncitizen's appearance for immigration proceedings, and effectuating removal orders. Respondents, however, identify no concrete way in which providing a brief pre-deprivation process would materially impede those interests. They do not, for example, suggest Petitioner posed a risk of flight or danger to the community such that forgoing pre-deprivation process was arguably warranted. Custody and bond hearings are routine, and courts have found the incremental burden modest compared to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). The third *Mathews* factor also weighs in Petitioner's favor.

*4. Weighing of the Mathews Factors*

As described above, all three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset and the absence of exigent circumstances, release is the appropriate, constitutionally required remedy. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

In reaching this conclusion, the Court recognizes the unusual posture of this case at present—Respondents are apparently in possession of a valid travel document and are prepared to execute Petitioner's removal. Indeed, the record suggests that absent Petitioner's filing of an

emergency motion for a temporary restraining yesterday afternoon, and the resulting prohibition on his transfer from this jurisdiction, it is likely the removal process would already be underway. Ordering Petitioner's release from custody at this point in time serves no discernable practical purpose except that Petitioner will be afforded what will presumably amount to a brief period of additional time out of custody prior to his removal. Nonetheless, the due process violation addressed above arises out of events that occurred in July 2026, and the Court is obligated to analyze Petitioner's *Mathews* claim based on those events, and not on more recent events. Respondents offer no authority for the Court to deviate from the core focus of *Mathews*—which is on the process afforded the petitioner at the time of the alleged deprivation. Thus, as explained above, the Court concludes that Petitioner is entitled to the relief he seeks by way of this federal habeas action, *i.e.,* release from custody.

**B. Requests for Injunctive Relief**

In addition to his request for release, Petitioner also seeks prospective relief related to any future re-detention. Dkt. 6 at 21. Petitioner asks the Court to prohibit Respondents from re-detaining him without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence. *Id.* In addition, Petitioner seeks a related order prohibiting the government from re-detaining him unless it first obtains a travel document that "complies with the INA's requirements," and provides that travel document to both him and his lawyer. *Id.* Petitioner further requests in his reply brief that he be permitted to self-deport to Ethiopia within two months should the Court order his release and that, if he does not leave on his own, Respondents be permitted to re-detain him only if they have already made concrete arrangements for him to be put on a flight to Ethiopia in the reasonably foreseeable future. Dkt. 13 at 7.

A party "seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008). A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).

While Petitioner seeks to prohibit his future re-detention absent specific conditions having been met, the factual record does not establish a specific, real, and immediate threat that he will be re-detained without process after his release here. Accordingly, his requests for prospective injunctive relief related to future re-detention are denied without prejudice.

## IV. CONCLUSION

Based on the foregoing, this Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (Dkt. 6) is GRANTED in part.

(2) Respondents SHALL release Petitioner from immigration detention within **twenty-four (24) hours** on reasonable conditions of supervision and SHALL file a certification within **two (2) business days** confirming that Petitioner has been released.

(3) Petitioner's requests for prospective injunctive relief are DENIED without prejudice.

(4) Petitioner's motion for a temporary restraining order (Dkt. 15) is DENIED as moot.

//

//

DATED this 18th day of September, 2026.

S. KATE VAUGHAN
United States Magistrate Judge